**L. C. BROWNING et al., Appellants,**

v.

**PAY–LESS SELF SERVICE SHOES, INC., Appellee.**

**No. 11112.**

Court of Civil Appeals of Texas.

Austin.

Nov. 13, 1963.

Rehearing Denied Dec. 11, 1963.

J. W. Thomas, Belton; Robert L. Penrice, Waco, for appellants.

Skelton, Bowmer & Courtney, Temple, for appellee.

HUGHES, Justice.

Reverend L. C. Browning, Rosie Young, a feme sole and J. B. Wilson as next friend of Martha Wilson, a minor, sued Pay-Less Self Service Shoes, Inc. for damages, actual and exemplary, for their alleged wrongful detention and treatment by Pay-Less and its agents in Temple, Texas, on or about March 16, 1960.

Three separate suits were originally filed by appellants against individual defendants. These suits were superseded by amended petitions filed in these suits on March 12, 1962, in which the only defendant named was Pay-Less. These three causes were consolidated and a joint (2d) amended petition was filed by appellants June 18, 1962, naming Pay-Less as the only defendant.

Motion for summary judgment was made by Pay-Less and was sustained by the Trial Court. Judgment was rendered that appellants take nothing by their suit. The propriety of these actions is now before us. To determine this, it will be necessary for us to examine all relevant portions of the record, to-wit, the pleadings, motion for summary judgment and supporting and opposing affidavits. There are no depositions or admissions. Rule 166–A, T.R.C.P.

Appellants pled that Pay-Less was a corporation engaged in the retail business of selling shoes at a location in Temple, and that on or about March 16, 1960, they entered this place of business for the purpose of buying a pair of shoes. That a pair of shoes was purchased on the layaway plan, and then they left the store. Thereupon, an agent of Pay-Less commanded them to re-enter the store, which they did. Their exit from the store was then barred by this agent and appellants were ordered to remain in the store until the police arrived. When the police arrived, appellants were taken into custody by them at the request of the agent of Pay-Less. Appellants alleged that they were then taken by the police to police headquarters where they and their automobile were searched, the agent of Pay-Less having represented to the police that appellants had stolen shoes from its store. No stolen property was found in the possession of appellants, and they were released by the police.

Appellants, by their pleading, exonerated themselves from any illegal or improper conduct on the premises of appellee. They alleged that the acts of appellee were malicious and were committed without justification and without reason for it to believe that appellants had stolen any property from it. Damages resulting from the actions of appellee to appellants were alleged, actual and exemplary.

Pay-Less filed numerous exceptions to the pleading of appellants including exceptions that appellants' cause of action, if any, was barred by limitations under Arts. 5526 and 5524, V.A.C.S. It answered with a general denial and by specially pleading, in substance, the following:

That Mrs. Browning, Rosie Young and Martha Wilson entered its store in Temple on or about March 16, 1960, and began looking at displayed shoes. The manner of displaying shoes was that the shoe boxes were opened and placed on slanting shelves in order that its employees could at a glance determine whether any shoes were missing from the boxes. Shortly before the named persons (called appellants) entered the store all empty boxes had been removed from the shelves. That when appellants entered the store no other customers were present. That appellants separated so that they could not be carefully watched. A short time later, it was noticed by employees of Pay-Less that six shoe boxes were empty; that at such time there were no other persons in the store except appellants and the employees of Pay-Less. That appellants left the store but at the request of an employee they voluntarily re-entered the store and were questioned regarding the missing shoes. In the meantime, the police having been called, appellants were further questioned by the police, and they voluntarily went to the police station. That appellants were not in custody or under arrest at any time, and their persons were

never searched. That after questioning, appellants left the police station and returned to their homes.

Appellee alleged that the persons named did in fact steal six pairs of shoes on the occasion in suit.

Appellee further alleged that it had reasonable ground for supposing the offense of shoplifting to have been committed by appellants on the occasion in suit and that its conduct thereupon was privileged under Art. 1436e, V.A.P.C.

Appellees' motion for summary judgment was formal. It was supported by the affidavit of Jimmy O'Brien, manager of Pay-Less at the time of the incidents giving rise to this suit. The affidavit of Mr. O'Brien follows closely the allegations of the pleading of Pay-Less. He affirmed the pleading in all material aspects. The only additional fact in the affidavit, not in the pleading, is that appellants left the police station "without any charges being filed against them."

A controverting affidavit was filed by Mrs. Browning, Rosie Young and Martha Wilson, from which we quote:

"Each affiant admits that on or about March 16, 1960, that he entered defendant's shoe store located on west Adams Avenue at or in the 1400 Block, as invitees and potential customers for the specific purpose of purchasing shoes, and for no other purpose. They pointedly deny that the store had no other customer in it at the time of their entry, as claimed in the affidavit on file in support of the defendant's motion, and on the contrary say that at the time stated and the place such store had many shoppers in it. They categorically deny that upon entering the store, they separated and each went alone in separate directions. Affiants purchased three pairs of shoes on the lay away plan, making a cash deposit therefor of $1.00. The clerk put the three pairs in one bundle, and plaintiffs together left the store. No sooner than reaching the sidewalk they were called back into the store by the defendant, its agents and servants acting in the scope of their employment. Upon reentering in obedience to the abrupt demand that they come back into the store, the agents and servants of the defendant locked and barred the door, and all exits to the store, and by such agents were accused of theft of 6 pairs of shoes, and demand was made of these affiants to produce the shoes. Affiants denied any knowledge of the missing shoes, or that they were in their possession. While thus incarcerated and imprisoned, an agent of the store of the defendant, called the police. Upon arrival of the police the officer began a series of questions. Upon the insistence of the agent of the defendant for the immediate arrest of the affiants, and each of them, the police informed such agent that it would be necessary for a complaint to be filed. Demand was made that affiants, these plaintiffs, all get into the police car and be taken to the police station in downtown Temple. One would not stating that she wished to drive her own car down. Two were required to get into the car of the police and the car driven by the third was herded down through town and to the police headquarters where complaints were filed, affiant's car abruptly searched without a search warrant at the instance and request of the agent of the defendant. The affiants were detained under surveillance of the officers for hours and treated as common criminals. Demand was made for the key to the car that had been herded down and the car searched. Not finding the shoes, or any of them, and after demand was made to search for shoes on affiants feet, the prisoners were dismissed and allowed, after agonizing hours to go home."

It is our opinion that the Trial Court erred in rendering a summary judgment against appellants.

It is the contention of appellee that this is a suit for malicious prosecution and that it is barred by Art. 5524, supra.

An essential element of a cause of action for malicious prosecution is a showing that the criminal prosecution has terminated favorably to the plaintiff. Only upon such successful termination of the prosecution does a cause of action for malicious prosecution arise. Malicious Prosecution, 37 Tex.Jur.2d, Sec. 44, p. 560.

The affidavit of appellants states that criminal complaints were filed against them. There is neither pleading nor affidavit evidence concerning the disposition of these complaints. Hence it is impossible to determine whether or not a potential cause of action for malicious prosecution has arisen.

We are clearly of the opinion, however, that the gravamen of appellants' complaint is what transpired prior to the filing of any criminal charges. Certainly the filing of these complaints did not have the effect of expunging prior tortious acts committed by appellee, or of rendering them innocent, harmless or privileged. In making this statement we are, of course, not speaking factually, but only on the assumption that appellants' version of the incident is correct. If unlawful detention becomes legal then recovery may be had only for the unlawful portion of the detention. 25 Tex. Jur. Sec. 35 False Imprisonment, p. 268.[1]

False imprisonment is, in general, the direct restraint by one person of the physical liberty of another, without adequate legal justification. False Imprisonment, 25 Tex.Jur.2d Sec. 17, p. 250. One must, of course, be involuntarily deprived of his liberty in order for such deprivation to be wrongful. J. C. Penney Company v. Romero, 318 S.W.2d 129, San Antonio Civil

Appeals, writ ref., n. r. e. See also Dallas Joint Stock Land Bank of Dallas v. Britton, 134 Tex. 529, 135 S.W.2d 981, Tex.Comm. of App., pointing out the distinction between malicious prosecution and false imprisonment.

The affidavit of appellants is, in our opinion, sufficient to make an issue of fact as to whether or not they were involuntarily restrained of their physical liberty by appellee.

Art. 1436e, V.A.P.C., provides:

"Section 1. Any person while legally in a retail business establishment as an invitee or licensee who removes from its place, goods, edible meat or other corporeal personal property of any kind or character under the value of Fifty Dollars ($50.00) kept, stored or displayed for sale with the intent to fraudulently take and to deprive the owner of the value of the same and to appropriate the same to the use and benefit of the person taking is guilty of shoplifting. Altering of label or marking on goods, edible meat or other corporeal personal property or transferring same from one container to another with intent to defraud the owner also constitutes the crime of shoplifting.

"Prevention of consequences of shoplifting

"Sec. 2. All persons have a right to prevent the consequences of shoplifting by seizing any goods, edible meat or other corporeal property which has been so taken, and bringing it, with the supposed offender, if he can be taken, before a magistrate for examination, or delivering the same to a peace officer for that purpose. To justify such seizure, there must, however, be reasonable ground to suppose the crime of shoplifting to have been committed and

1. In McBeath v. Campbell, 12 S.W.2d 118, Tex.Comm. of App., a sheriff was held liable for false imprisonment of prisoner both before and after issuance of writ of habeas corpus, the false imprisonment by the sheriff having created the necessity for the writ, even though the imprisonment under the writ was legal.

the property so taken, and the seizure must be openly made and the proceeding had without delay."

There is nothing in this record indicative of the value of the missing six pairs of shoes. If their value exceeded $50.00 this statute is, by its terms, inapplicable.

Sec. 2 of this statute authorizes the seizure of the property taken and " * * * bringing it, with the supposed offender * * * " before a magistrate.

Since no property was seized as contemplated by this statute, there was no authority under such statute for appellee to restrict the free movement of appellants in any respect. Only in conjunction with the seizure of property under the circumstances described is the restraint of the supposed offender authorized by this statute.

We quote from 6 Tex.Jur.2d, Arrest, Sec. 12, p. 148, regarding arrests without a warrant:

"The provisions of the code providing for arrest without a warrant are founded in the law of necessity, that is, the necessity for prompt action in order to arrest or detain the offender so as to prevent his escape. The general purpose of such laws is to prescribe the duties of officers and, at the same time, to protect the liberty of the citizen or individual. The Constitution guarantees that the people are to be secure in their persons from all unreasonable seizures. Therefore, despite obiter dicta expressions to the contrary in a few cases, the courts, both civil and criminal, have consistently said that the arrest of a citizen without a warrant is an unreasonable seizure of his person, unless it is expressly authorized by statute. And since the matter of arresting without a warrant is exclusively regulated by the Constitution and the state statutes, it follows that the authority to arrest without warrant cannot be conferred by the common law or by the court decision of other states.

Such statutes are strictly construed and must always be subordinated to the constitutional guaranties against unreasonable seizure. Hence, if the situation that, it is claimed, authorizes an arrest without warrant does not come squarely within one of the statutory classifications, authority does not exist, * * " ·

It is a matter of deep public concern when one citizen is authorized to arrest another citizen without a warrant issued in accordance with law. Such arrests are fraught with grave danger to the public tranquility, peace and to individual freedom which we hold so dear. We do not for a moment believe that the Legislature has authorized a clerk in a variety store to arrest on suspicion of the theft of a ten cent bottle of perfume all the persons then in the store, be they few or many, and carry them before a magistrate when the only evidence of the theft of the perfume is that it is not in its accustomed place and is never found. If the Legislature had authorized such indiscriminate citizen arrests without legal warrant and upon such flimsy grounds, its action would be of extremely doubtful constitutionality. We are resolute in our conviction that the Legislature has made no such attempt, and that Art. 1436e, supra, plainly authorizes a citizen's arrest only as a concomitant to the seizure of property under the circumstances described in the statute.

We also hold that an issue of fact would be presented if Art. 1436e is applicable to this case which is whether or not appellee had reasonable ground to suppose that appellants had taken the property or committed the offense of shoplifting.

According to appellants, they did not take the shoes, other people were in the store who could have taken them; they, appellants, did not separate in the store; they were there for a lawful purpose; they committed no suspicious acts. Then, too, there is only appellee's employee's statement that any shoes were stolen or missing. This statement is not acceptable as a matter of

law since it is an element of the offense charged to appellants, the commission of which they deny. Furthermore, the fact that appellants were in custody from the time they left the store until released by the police and no shoes were found on them weighs heavily in favor of their innocence.

The judgment of the Trial Court is reversed and this cause is remanded for trial in accordance with this opinion.